UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

                              Plaintiff,

                                                     **MEMORANDUM OF**
                                                     **DECISION AND ORDER**
      - against -                            CV 05-3928 (ADS) (ARL)


RAPPAPORT, HERTZ, CHERSON &
ROSENTHAL, P.C.,

                              Defendant.
----------------------------------------------------------------X

**APPEARANCES:**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Attorneys for the plaintiff
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004
        By:    Estela Diaz , Esq., Lisa Sirkin, Esq., Michelle A. Caiola, Esq.,
                  and Elizabeth Grossman, Esq., of Counsel

**CARABBA LOCKE LLP**
Attorneys for the Plaintiff-Intervenor Melissa Castillo
100 William Street
New York, NY 10038
        By:    Anthony Carraba, Jr., Esq, and Jeffrey I. Schulman, Esq.,
                  of Counsel

**KAUFMAN, BORGEEST & RYAN**
Attorneys for the Defendant Rappaport, Hertz, Cherson & Rosenthal, P.C.
99 Park Avenue, 19th Floor
New York, NY 10016
        By:    Jonathan B. Bruno, Esq., of Counsel

**SPATT, District Judge.**

This case involves allegations by the Equal Employment Opportunity Commission ("EEOC") of sex discrimination, retaliation, and constructive discharge against the law firm Rappaport, Hertz, Cherson & Rosenthal, P.C. ("Rappaport Hertz" or the "defendant") pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"). Presently before the Court are the following motions: (1) a motion by Melissa Castillo ("Castillo") to intervene in the Title VII action and add additional defendants and claims; and (2) a cross-motion by the defendant to compel Castillo to arbitrate her additional state and city claims pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.

## I. BACKGROUND

Castillo was employed as a closing coordinator at Rappaport Hertz from May 2003 to August 2004. Castillo claims that almost immediately after beginning employment one of her co-workers, Herbie Gonzalez, began making sexual advances toward her, such as staring; buying flowers; and saying things such as "you are beautiful," and "I love you." Castillo complained to management and they responded by moving Gonzalez to an office that was farther away. However, the alleged harassment continued, with Gonzalez paging Castillo's intercom twice a day, asking her out on dates, and placing his arm around her shoulders.

The harassment culminated on July 21, 2004, when Castillo picked up the receiver of her phone and alleges that she felt a sticky liquid on her face by her mouth.

Castillo and three of her co-workers all concluded that the foreign substance smelled like semen. Upon notifying attorney William Rappaport of the incident, he suggested that the police be called. A police report was filed indicating that a sticky substance was found on the phone.

Gonzalez allegedly signed into the building the night prior to the July 21st incident at approximately 11:00 pm. In addition, Gonzalez allegedly made statements to co-workers that he was worried that the police might ask for a sample of his DNA and that he was so drunk on the night of July 20 that he did not remember anything from that night.

Two weeks later no action had been taken by management with regard to Gonzalez. Castillo met with William Rappaport to discuss why nothing had been done and he told her that he did not believe Gonzalez was responsible for the incident. Castillo then indicated that she could no longer work at the law firm and she resigned.

On January 18, 2005, Castillo filed with the EEOC a charge of sex discrimination and harassment against Rappaport Hertz, William Rappaport, and Herbie Gonzalez, alleging that she was subject to egregious acts of sexual harassment and gender discrimination. The EEOC investigated Castillo's claims and, on June 17, 2005, issued a determination finding that Rappaport Hertz subjected Castillo to sexual harassment and constructively discharged her, establishing a violation of Title VII.

On August 17, 2005, the EEOC commenced this lawsuit to correct the unlawful employment practices and to provide appropriate relief to Castillo.

Castillo filed this motion to intervene to pursue a claim against Rappaport Hertz under Title VII, and to pursue state and city law claims against the defendant and William Rappaport and Gonzalez. The defendant opposes the motion, and cross-moves to compel arbitration, based on a compulsory arbitration agreement that Castillo entered into with the law firm when she commenced employment.

This is the second action brought by the EEOC against the law firm Rappaport Hertz alleging a pattern of unlawful sex discrimination and retaliation. The first case was commenced on September 30, 2002, on behalf of both the public interest and three women who claimed that the law firm had subjected female employees to a pattern of sexual harassment involving sexually offensive conduct, comments, epithets, and propositions, as well as retaliation for having filed complaints with the EEOC. As in this case, one of the women moved to intervene and assert state law claims, and the defendant cross-moved to compel arbitration, based on the same form arbitration agreement. The Court granted the intervenor's motion, finding there was supplemental jurisdiction over the state law claims. The Court also granted the defendant's motion to compel the intervenor to arbitrate her claims, finding that her employment claims fell within the scope of the arbitration agreement. EEOC v. Rappaport, Hertz, Cherson & Rosenthal, P.C., 273 F. Supp. 2d 260 (E.D.N.Y. 2003).

In the prior lawsuit, the EEOC's claims, which were not part of the arbitration agreement, were resolved by a consent decree. In this case, in addition to the specific allegations of employment discrimination, the EEOC alleges that Rappaport Hertz violated this consent decree by its conduct toward Castillo.

## II. DISCUSSION

### A. Motion to Intervene

Rule 24 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") governs intervention, stating, in relevant part, that "[u]pon timely application anyone shall be permitted to intervene in an action . . . when a statute of the United States confers an unconditional right to intervene." Fed. R. Civ. P. 24(a)(1). Title VII is one of the few statutes that provides individuals a right to intervene. See 42 U.S.C. § 2000e-5(f)(1) ("[T]he person or persons aggrieved shall have the right to intervene in a civil action brought by the [EEOC] . . . ."). Most courts agree that this statutory provision permits individuals an "unconditional right to intervene" under Rule 24(a)(1) in a Title VII enforcement action brought by the EEOC against the employer. McClain v. Wagner Elec. Corp., 550 F.2d 1115, 1119 (8th Cir. 1977); EEOC v. Rekrem, Inc., 199 F.R.D. 526, 529 (S.D.N.Y. 2001); EEOC v. Die Fliedermous, L.L.C., 77 F. Supp. 2d 460, 469 (S.D.N.Y. 1999); EEOC v. Pacific Maritime Ass'n, 188 F.R.D. 379, 380 (D. Or. 1999); see also EEOC v. Waffle House, Inc., 534 U.S. 279, 291, 122 S. Ct. 754, 763, 151 L. Ed. 2d 755 (2002) (stating that an individual may intervene in the EEOC

enforcement action); General Tel. Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 326, 100 S. Ct. 1698, 1704, 64 L. Ed. 2d 319 (1980) (stating that an individual may intervene in the EEOC enforcement action).

Here, the defendant raises the same argument that was rejected in the previous related case brought by the EEOC, that because the employee signed a "Compulsory Arbitration Agreement" as a condition of her employment, she does not have an unconditional right to intervene in this action. The Court sees no reason to depart from its previous ruling that rejected this frivolous argument. It is well-settled that although parties may agree to arbitrate federal statutory claims, "a party does not forgo the substantive rights afforded by the statute . . . ." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 111 S. Ct. 1647, 1652, 114 L. Ed. 2d 26 (1991). Indeed, the defendant's argument is foreclosed by the Supreme Court's decision in Waffle House, which held that an arbitration agreement neither bars the EEOC from pursuing statutory claims on behalf of employees nor does it prevent the employees from intervening in the action. 534 U.S. at 291, 122 S. Ct. at 763, 151 L. Ed. 2d 755.

Accordingly, Castillo has an unconditional right to intervene in this action with regard to her Title VII claims and her motion to intervene in this action is therefore granted.

In addition, because it is undisputed that Castillo's state and local claims against the defendant, William Rappaport, and Gonzalez derive from the same operative facts that form the basis of this action, the Court grants Castillo's request to exercise supplemental jurisdiction over these claims and permit the filing of her proposed complaint.

**B.     Motion to Compel Arbitration**

The defendant moves to compel Castillo to arbitrate all of her claims, citing a "Compulsory Arbitration Agreement" that she agreed to prior to commencing employment with Rappaport Hertz. This agreement signed by both parties provides that any dispute regarding her employment or separation from employment shall be resolved by compulsory arbitration, and that the costs and fees "shall be born in accordance with the Rules and Procedures of the American Arbitration Association."

The Federal Arbitration Act creates a strong federal policy favoring arbitration, and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Gilmer, 500 U.S. at 25, 111 S. Ct. 1647, 114 L. Ed. 2d 26; Opals on Ice Lingerie v. Body Lines, Inc., 320 F.3d 362, 369 (2d Cir. 2003). The Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Indeed, the Act " 'leaves no place for the exercise of discretion by the district court, but instead mandates that district courts shall direct the parties to proceed to

arbitration on issues as to which an arbitration agreement has been signed.'" Worldcrista Corp. v. Armstrong, 129 F.3d 71 (2d Cir. 1997) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (1985)).

The Supreme Court and the Second Circuit have made it clear that "arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995); accord PaineWebber, Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996). In this light, it is well-established that Title VII claims are arbitrable, Desiderio v. NASD, 191 F.3d 198, 206 (2d Cir. 1999), and that "the provisions of the [Act] are controlling even though the dispute itself may arise under state law," Fletcher v. Kidder Peabody & Co., 81 N.Y.2d 623, 630–31, 619 N.E.2d 998, 601 N.Y.S.2d 686 (1993), or local law, Rice v. Brown Bros. Harriman & Co., No. 96 Civ. 6326, 1997 U.S. Dist. LEXIS 3628, at *3 (S.D.N.Y. Mar. 21, 1997). Indeed, the Second Circuit's most recent decision on the subject of arbitration stated that if the parties have agreed to resolve "all disputes" by arbitration, even the issue of arbitrability is one to be resolved by the arbitrator. See Alliance Bernstein Inv. Research and Management, Inc. v. Schaffran, 445 F.3d 121, 125 (2d Cir. 2006); Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2d Cir. 2005).

As a consequence, the only questions for the court to decide are whether there was a valid agreement to arbitrate, and whether Congress precluded arbitration of the statutory rights at issue. See Buckeye Check Cashing, Inc. v. Cardegna, 126 S. Ct. 1204, 1208, 163 L. Ed. 2d 1038 (2006); Gilmer, 500 U.S. at 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26; Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967); Sphere Drake Insurance Ltd. v. Clarendon Nat'l Ins. Co., 263 F.3d 26, 30 (2d Cir. 2001); Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 294 (2d Cir. 1999); Specht v. Netscape Communications Corp., 306 F.3d 17, 26 (2d Cir. 2002) (quoting Interocean Shipping Co. v. Nat'l Shipping & Trading Corp., 462 F.2d 673, 676 (2d Cir. 1972)); Bird v. Shearson Lehman/American Express, Inc., 926 F.2d 116, 118 (2d Cir. 1991).

In this case Castillo attacks the validity of the arbitration agreement itself. Castillo claims that in order to file her claims before the American Arbitration Association ("AAA") she may be required to pay an initial fee that could range from $6,000 to $11,250, depending on the monetary relief sought in her claim. This argument that is premised on the contractual defense of adhesion, has its origins in Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 81, 121 S. Ct. at 517, 148 L. Ed. 2d 373 (2000), where the Supreme Court stated "that the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." Id. at 90, 121 S. Ct. at 517, 148 L. Ed. 2d 373.

9

The Court continued, "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Id. at 92, 121 S. Ct. at 522–23, 148 L. Ed. 2d 373.

Neither the Supreme Court nor the Second Circuit have elaborated on how detailed the showing of prohibitive expense need be to invalidate an agreement to arbitrate. The majority of the Circuit Courts have endorsed the approach taken in Bradford v. Rockwell Semiconductor Sys., Inc., 238 F.3d 549, 556 (4th Cir. 2001), where the Fourth Circuit held that in the employment discrimination context the courts should apply a case-by-case analysis focused on "ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether the cost differential is so substantial as to deter the bringing of claims." Id.; James v. McDonald's Corp., 417 F.3d 672, 680 (7th Cir. 2005); Musnick v. King Motor Co. of Fort Lauderdale, 325 F.3d 1255, 1259 (11th Cir. 2003); Thompson v. Irwin Home Equity Corp., 300 F.3d 88 (1st Cir. 2002); Blair v. Scott Specialty Gases, 283 F.3d 595, 610 (3d Cir. 2002); Primerica Life Ins. Co. v. Brown, 304 F.3d 469, 471 n. 6 (5th Cir. 2002);Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 683 (8th Cir. 2001); LaPrade v. Kidder, Peabody & Co., Inc., 246 F.3d 702, 708 (D.C. Cir. 2001). This case-by-case approach involves comparing the financial means of the aggrieved

employee to the costs associated with arbitrating the dispute. See Blair, 283 F.3d at 608.

The Sixth Circuit takes a different approach, and looks at whether the cost of arbitration may have a "chilling effect" on similarly situated litigants, as opposed to the particular effect on the plaintiff in the case. Morrison v. Circuit City Stores, Inc. 317 F.3d 646, 669 (6th Cir. 2003). Under this approach, "The court must evaluate the likely cost of arbitration not in absolute terms, but relative to the likely costs of litigation." Cooper v. MRM Investment Co., 367 F.3d 493, 511 (6th Cir. 2004). If the court finds that the costs of arbitration would deter "a substantial number of similarly situated persons from attempting to vindicate their statutory rights in the arbitral forum . . . ," the agreement to arbitrate is unenforceable. Morrison, 317 F.3d at 670.

The Ninth Circuit, in Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 894 n. 5 (9th Cir. 2002), has held that any arrangement in which the employee is required to split the arbitrator's fees renders an arbitration agreement unenforceable. Id. The court reasoned that plaintiffs should not "have to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." Id.; see also Ting v. AT & T, 319 F.3d 1126, 1151 (9th Cir. 2003); Veliz v. Cintas Corp., No. 03-01180(SBA), 2005 WL 1048699, at *3 (N.D. Cal. May 4, 2005).

Most district courts in the Second Circuit have adopted the Fourth Circuit's case-by-case analysis that focuses on the claimant's ability to pay the arbitration fees

11

and costs and the expected cost differential between arbitration and litigation. See In re Currency Conversion Fee Antitrust Litigation, 265 F. Supp. 2d 385, 411 (S.D.N.Y. 2003); Stewart v. Paul, Hastings, Janofsky & Walker, LLP, 201 F. Supp. 2d 291, 293 (S.D.N.Y. 2002); Mildworm v. Ashcroft, 200 F. Supp. 2d 171, 179 (E.D.N.Y. 2002); Rajjak v. McFrank and Williams, No. 01CIV0493LAP, 2001 WL 799766, at *4 (S.D.N.Y. July 13, 2001); Hale v. First USA Bank, N.A., No. 00CIV5406JGK, 2001 WL 687371, at * (S.D.N.Y. June 19, 2001). However, the court in Ball v. SFX Broadcasting, Inc., 165 F. Supp. 2d 230, 239–40 (N.D.N.Y. 2001), noted that the Fourth Circuit's approach of focusing on the financial situation of the particular plaintiff and the per se rule of invalidating any arbitration agreement that requires an employee to pay for an arbitrator's costs are both inappropriate. Instead, the court in Ball held that "it is sufficient for an employee seeking to avoid arbitration to show a likelihood that he or she will be responsible for significant arbitrators' fees, or other costs which would not be incurred in a judicial forum." Id.

The Court agrees with the approach taken in Morrison and Ball, which focuses on whether the costs associated with arbitration are prohibitively expensive without looking at the individual financial circumstances of each plaintiff. This approach is consistent with the Supreme Court's decision in Green Tree and the intent of Title VII, neither of which contemplate the financial condition of an employee claiming discrimination. In Green Tree, the Supreme Court noted that "we believe that where,

as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Id. 531 U.S. at 92, 121 S. Ct. at 522–23, 148 L. Ed. 2d 373. There is nothing in this language from the Court that indicated an intent to analyze the particular financial ability of each plaintiff. Further, the Court is unaware of any provision of Title VII that makes an employee's financial situation relevant to the merits of his or her claim of discrimination.

Regardless of whether the Court considers Castillo's financial situation, it is clear that if the arbitration costs are in the range of $6,000 to $11,250, as she alleges, these costs would be prohibitively expensive in comparison to the filing fee she is required to pay to commence a proceeding in federal court. With reasonable certainty, these substantial costs would deter a significant number of claimants from bringing a lawsuit regardless of their financial situation. The fee-shifting provisions of Title VII show that Congress never intended to impose such substantial costs for employees to vindicate their statutory rights. However, in this case it is unclear whether Castillo would be required to pay these substantial fees to commence an arbitration.

The AAA's National Rules for the Resolution of Employment Disputes contemplate two different fee schedules depending on the type of arbitration agreement at issue. If the dispute arises out of a "employer-promulgated plan," the fees an employee are required to pay are capped at $125.00. On the other hand, if the

dispute arises out of an "individually-negotiated employment agreement," the employee is required to pay significant initial filing fees depending on the amount of the claim. For example, a claim seeking $500,000 to $1,000,000 in damages initially costs $6,000 for a filing fee, plus $2,500 for a case service fee. In addition, the employee may be liable for significantly more than the initial filing fee, including arbitrator compensation and other administrative fees. That said, the AAA rules provide that the "arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award." AAA Rules at 11.

Both parties disagree as to whether the Compulsory Arbitration Agreement that Castillo signed is an employer-promulgated plan or an individually-negotiated employment agreement. The AAA Rules provide no guidance to differentiate between the two types of plans, nor do most of the cases that have encountered these types of arbitration agreements. See Ramirez v. Cintas Corp., No. C 04-00281 JSW, 2005 WL 2894628, at *9 (N.D. Cal. Nov. 2, 2005); Perry v. New York Law School, No. 03 Civ. 9221(GBH), 2004 WL 1698622, at *3 (S.D.N.Y. July 28, 2004); Gruber v. Louis Hornick & Co., Inc., No. 02 Civ. 5092(SHS), 2003 WL 21222541, at *3–4 (S.D.N.Y. May 23, 2003); Mildworm, 200 F. Supp. 2d at 175; Lelouis v. Western Directory Co., 230 F. Supp. 2d 1214, 1223 n.16 (D. Or. 2001). The AAA Rules merely state that "[a]ny questions or disagreements about whether a matter arises out of an employer-promulgated plan or an individually-negotiated agreement or contract

14

shall be determined by the AAA and its determination shall be final." AAA Rules at 11.

One case sheds light on the AAA's distinction between "employer-promulgated" and "individually-negotiated." In Williams v. Tully, No. C-02-05687 MMC, 2005 WL 645943, at *2–3 (N.D. Cal Mar. 18, 2005), the district court was faced with a dispute involving the allocation of fees for an arbitration between an employer and employee before the AAA. In that case, the AAA decided that the arbitration agreement signed by the employee was individually negotiated, explaining "when a contract exists between an employer and an executive or other high ranking employee where the terms of the contract appear to have been open for discussion, it is assumed that individual had the opportunity to negotiate or reject the terms of the contract." Id. at * 3. In addition, the court noted that the employment agreement was drafted by the employee's attorneys after several rounds of negotiations.

Although the Court cannot speculate as to the decision of the arbitrator on this issue, see American Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 712 (5th Cir. 2002), the Court finds with reasonable certainty that the Compulsory Arbitration Agreement signed by Castillo was not individually negotiated. Castillo worked at Rappaport Hertz as a closing coordinator, a job similar to a paralegal, that is not the type of high level employee who would negotiate the terms and conditions of employment. In addition, the agreement is on a preprinted form that was undisputedly drafted by the

employer. Indeed, the prior related case that the EEOC commenced against Rappaport Hertz involved an identical Compulsory Arbitration Agreement that was signed by several associates of the firm. Thus, it is clear that this agreement is part of terms and conditions of employment that an employee is required to agree to prior to commencing employment at Rappaport Hertz, and that it was not an agreement that was individually negotiated by Castillo. As a consequence, it appears Castillo will only have to pay the $125 filing fee for disputes arising out of an employer-promulgated plan.

Accordingly, because the language under the Compulsory Arbitration Agreement makes clear that all of Castillo's claims fall within the scope of the agreement, Castillo must arbitrate her Title VII, state, and city claims. Therefore, the defendant's motion to compel arbitration is granted. In addition, the action by Castillo against the defendant is stayed pending the resolution of arbitration proceeding, and this Court will retain jurisdiction over any subsequent petition for judicial review of any award or imposition of fees by the arbitrator. See In re Currency Conversion Fee Antitrust Litigation, 265 F. Supp. at 400 ("Section 3 of the FAA provides that the court must stay any suit or proceeding until arbitration has been completed if the action concerns 'any issue referable to arbitration' under a written agreement for such arbitration."); Rajjak, 2001 WL 799766, at *4.

The Court notes that because the EEOC is not a party to the arbitration agreement between Castillo and Rappaport Hertz, it is not compelled to arbitrate its case against Rappaport Hertz. Waffle House, 534 U.S. at 294, 122 S. Ct. 754, 151 L. Ed. 2d 755 ("No one asserts that the EEOC is a party to the contract, or that it agreed to arbitrate its claims . . . Accordingly, the proarbitration policy goals of the FAA do not require the agency to relinquish its statutory authority if it has not agreed to do so."). An arbitration agreement between an employer and its employee does not prevent the EEOC from vindicating the public interest. Id. at 296. Therefore, the Court will not stay the EEOC's action against the defendant, but will stay Castillo's proceedings against the defendant pending the conclusion of the arbitration proceeding.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that Castillo's motion to intervene in this action is **GRANTED**; and it is further

**ORDERED**, that Castillo's request that the Court exercise supplemental jurisdiction over her state and local claims is **GRANTED**; and it is further

**ORDERED**, that the defendant's motion to compel arbitration of Castillo's Title VII, state, and local claims is **GRANTED**; and it is further

**ORDERED,** that Castillo's proceedings against the defendant is stayed pending the conclusion of the arbitration proceeding; and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption as follows:

---------------------------------------------------------- X
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

                              Plaintiff,

             - against -

RAPPAPORT, HERTZ, CHERSON &
ROSENTHAL, P.C.,

                              Defendant.
---------------------------------------------------------- X

MELISSA CASTILLO,

                              Plaintiff-Intervenor,

             - against -

RAPPAPORT, HERTZ, CHERSON &
ROSENTHAL, P.C., WILLIAM RAPPAPORT, and
HERBIE GONZALEZ,

                              Defendant.
---------------------------------------------------------- X

**SO ORDERED.**

Dated: Central Islip, New York
September 16, 2006

                 */s/ Arthur D. Spatt*
                 ARTHUR D. SPATT
                United States District Judge